**UNITED STATES ex rel. VOJEWVIC v. CURRAN, Commissioner of Immigration.***

(Circuit Court of Appeals, Second Circuit. April 5, 1926.)

No. 176.

Aliens ⬅=53—Alien, admitted member of Communist Party and similar organizations, possessing for distribution paper of that party and other publications, held subject to deportation (Immigration Act Feb. 5, 1917 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼a–4289¼u]; Act Oct. 16, 1918 [Comp. St. Ann. Supp. 1919, §§ 4289¼b(1)–4289¼b(3)], and section 1, as amended by Act June 5, 1920 [Comp. St. Ann. Supp. 1923, § 4289¼b(1)]).

Alien, who admitted membership in Communist Party and Workers' International Union, who was secretary of Communist Party in St. Louis, which later became Communist Party of America, and was found in possession, for purpose of distribution, of a paper of the Communist Party and 112 publications of like character, and of buttons and red flags re-

*Certiorari denied 46 S. Ct. 633, 70 L. Ed. —.

ceived from Socialist Party headquarters, *held* subject to deportation under Immigration Act Feb. 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼a–4289¼u), Act Oct. 16, 1918, being Comp. St. Ann. Supp. 1919, §§ 4289¼b(1)–4289¼b(3), and section 1, as amended by Act June 5, 1920, being Comp. St. Ann. Supp. 1923, § 4289¼b(1).

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Milos Vojewvic, alias Milos Vojnovic, against Henry H. Curran, Commissioner of Immigration at Port of New York. From a decree dismissing the petition, relator appeals. Affirmed.

Andrew Byrne, of New York City (Carl Weiss, of Schenectady, N. Y., of counsel), for appellant.

Emory R. Buckner, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The appellant came to the United States in August, 1913, and was found living in St. Louis, Mo., on November 17, 1919, following the trade of a butcher. He was arrested on that day and accorded a hearing, to determine whether or not he should be deported. In the warrant he was charged with a violation of the Immigration Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼a–4289¼u), and the Act approved October 16, 1918 (Comp. St. Ann. Supp. 1919, §§ 4289¼b[1]–4289¼b[3]), for the reason "that he has been found advocating or teaching anarchy; that he is an alien anarchist; that he advocates the overthrow by force or violence of the government of the United States; that he advocates the overthrow by force or violence of all forms of law; that he advocates the assassination of public officials; and that he advocates the unlawful destruction of property."

Ordered deported, he sued out a writ of habeas corpus, which was dismissed by the District Court for the Eastern District of Missouri, and his appeal to the Circuit Court of Appeals for the Eighth Circuit was dismissed. While at Ellis Island, in the port of New York, awaiting deportation, he made application for and obtained a writ of habeas corpus in the District Court for the Southern

District of New York. The District Judge dismissed the writ, and he appeals.

The record discloses that he was a married man, 28 years of age, when he arrived in this country, and was born in Croatia, Austria, where he served in the Austrian army. He belonged to the Communist Party, the Workers' International Union, and American Federation of Labor, and was secretary of the Communist Party in St. Louis. On October 19, 1920, it became the Communist Party of America. He had been distributing "Znage," a paper of the Communist Party; subscribed to the Workingman's Defender and the Nova Istinia. These were found in his possession when arrested, as well as some books of like character. In all, there were 112 different publications, aggregating about 2,200 pieces. He also had in his possession buttons and red flags, which he received from the Socialist Party headquarters. These publications he was to distribute among members of his party. Among them were "Evolution and Revolution" and "Korstitucija Communistika Party"; 175 copies of the "Glas Komunista" were also found in his possession. His work as secretary of the Communist Party was a labor of love, and he was working hard at it. He was acting as other members of this party did under the constitution, which provided that "every person who accepts the principles and tactics of the Communist Party and the Communist Internationale and agrees to engage actively in the work of the party"—which was necessary to be eligible to membership, for "it is the aim of this organization to have in its ranks only those who participate actively in the work." He admitted to the government officers when questioned that he believed in changing the form of government to the soviet form of government by political action and industrial action, and he believed in the Third Internationale of Moscow, in nationalization of industry, commerce, banks, etc. He stated that the literature he had was for distribution, as were the buttons and red flags found in his possession.

The interpretation of these publications, such as appear in the record, is sufficient to find him guilty of the charges for which he has been ordered deported. After a full hearing, with ample opportunity to present any defense he might have, in the district of Missouri, the District Judge found no difficulty in reaching the conclusion that he should be deported under the statute. Indeed, before the matter came before the District Court of Missouri, he was given a full hearing before the Labor Department, adjournments were had, and opportunities to submit new matters were extended to him. We do not deem it necessary to here recite the language or phrase of the various publications and their revolutionary character. It is sufficient to say that we are in full accord with the conclusions reached by the District Court of Missouri.

Act October 16, 1918, § 1, as amended by the Act approved June 5, 1920 (Comp. St. Ann. Supp. 1923, § 4289¼b[1]), describes the aliens who shall be excluded from the United States. They are:

"(a) Aliens who are anarchists;

"(b) Aliens who advise, advocate, or teach, or who are members of or affiliated with any organization, association, society, or group, that advises, advocates, or teaches, opposition to all organized government;

"(c) Aliens who believe in, advise, advocate, or teach, or who are members of or affiliated with any organization, association, society, or group, that believes in, advises, advocates, or teaches (1) the overthrow by force or violence of the government of the United States or of all forms of law * * * or (3) the unlawful damage, injury or destruction of property, or (4) sabotage;

"(d) Aliens who write, publish, or cause to be written or published, or who knowingly circulate, distribute, print, or display, or knowingly cause to be circulated, distributed, printed, published, or displayed, or who knowingly have in their possession for the purpose of circulation, distribution, publication, or display, any written or printed matter, advising, advocating, or teaching, opposition to all organized government, or advising, advocating or teaching: (1) the overthrow by force or violence of the government of the United States or of all forms of law, or (2) the duty, necessity or propriety of the unlawful assaulting or killing of any officer or officers * * * of the government of the United States or of any other organized government, or (3) the unlawful damage, injury or destruction of property, or (4) sabotage;

"(e) Aliens who are members of or affiliated with any organization, association, society, or group, that writes, circulates, distributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue, or display, any written or printed matter of the character described in subdivision (d)."

The appellant's membership in these associations, his possession of the publications referred to, and his intention to distribute them, all on his own admissions, together with the contents of these publications, such as are found in the record, are sufficient to bring him within the terms of the enactment referred to. It is sufficient on which to deport him, even though it may be, as argued, that he did not know the contents of all the literature that he was circulating. Tisi v. Tod, 264 U. S. 131, 44 S. Ct. 260, 38 L. Ed. 590.

This proceeding by this alien is but another attempt to delay a now too long delayed deportation. There is no difference in the substance of the present application from that maintained in the Missouri district. A new presentation of it by different counsel does not excuse the offense of such long delay, nor change the character of the present application. Wong Doo v. United States, 265 U. S. 239, 44 S. Ct. 524, 68 L. Ed. 999. The effort to now seek a reversal of the District Court of Missouri may not prevail. The alien was there accorded a fair and impartial hearing, with full opportunity to present such defense or excuse as he might have. U. S. ex rel. Ciccerelli v. Curran, 12 F.(2d) 394. decided this day, C. C. A. Second Circuit. He adds nothing in his present application to the former, and merely obtains delay. We hold the admissions made by the alien, together with the literature found upon him and the association in which he lived, warrants deportation. U. S. ex rel. Rennie v. Brooks (D. C.) 284 F. 908.

Decree affirmed.