## MURDOCH v. CLARK.
### No. 2618.

Circuit Court of Appeals, First Circuit.
Nov. 3, 1931.

Harry Hoffman, of Boston, Mass., for appellant.

Edward F. McElroy, Asst. U. S. Atty., of Providence, R. I. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

WILSON, Circuit Judge.

The petitioner is an alien. He was detained on a warrant of deportation after a hearing based upon charges, among others, that he was a member of an organization, or affiliated with an organization, association, or group which teaches, advocates, or advises

the overthrow of the government of the United States by force and violence, and also that he was a member of or affiliated with an organization, society, or group which publishes, circulates, or distributes written or printed matter which teaches or advocates or advises the overthrow of the government of the United States by force and violence.

The alien, following his detention on the warrant of deportation, petitioned the District Court of Rhode Island for a writ of habeas corpus upon the ground that the hearing before the inspector of immigration was unfair and the charges were not sustained by any competent evidence.

The petition for writ was denied and the matter is before this court on appeal, the alien assigning as errors that the District Court erred in ruling that there was a fair hearing before the immigration officials, and that there was competent evidence to sustain the charges.

■ Counsel for the alien urges that the hearing before the inspector of immigration was unfair since an amendment containing the charges on which the order of deportation is based was not seasonably presented to him; and, further, that at his request a subpœna was not issued to summon witnesses by whom he expected to prove that certain pamphlets, letters, and papers received by the inspector as evidence were unlawfully seized, if not in their presence, at least under the direction of federal officers; and that there was no competent evidence to support the charges against the alien. The first ground is without merit, as no objection was raised at the time on this ground, and the hearing was adjourned from time to time and the alien given sufficient time to meet the new charges.

■ It is true that deportation without a fair hearing or unsupported by any evidence is a denial of due process, which may be corrected on habeas corpus. But a want of due process is not established by showing merely that the decision was erroneous, or that incompetent evidence was received and considered. The proceedings in deportation hearings are of a summary nature, are not criminal, are not required to be conducted according to the usual proceedings in courts of law, nor confined to the strict rules of evidence enforced in the courts.

■ Upon a review on habeas corpus, it is sufficient if there was some evidence from which the conclusion of the administrative tribunal could be deduced, and that it committed no error so flagrant as to convince a court of the essential unfairness of the trial. Tisi v. Tod, 264 U. S. 131, 133, 44 S. Ct. 260, 68 L. Ed. 590; U. S. ex rel. Vajtauer v. Com'r of Immigration, 273 U. S. 103, 106, 47 S. Ct. 302, 71 L. Ed. 560; Low Wah Suey v. Backus, 225 U. S. 460, 468, 32 S. Ct. 734, 56 L. Ed. 1165; Bilokumsky v. Tod, 263 U. S. 149, 154–157, 44 S. Ct. 54, 68 L. Ed. 221: "To render a hearing unfair the defect, or the practice complained of, must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process. * * * The object [of a writ of habeas corpus] is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." Bilokumsky v. Tod, supra, pages 157, 158 of 263 U. S., 44 S. Ct. 54, 57.

The alien entered this country in 1923. He has since been actively engaged from time to time in organizing mass groups of labor in opposition to the American Federation of Labor, and in conducting or advising in labor strikes. He admitted membership at one time in the Workers' Party of America, which was affiliated with the Communist Party, and sent delegates to the Third International at Moscow. He also admitted membership in the National Textile Workers' Union which sent delegates to the Red International Labor Union at Moscow, and was its national secretary; he was also a member of the Trade Union Unity League, and of its National Council, with which the National Textile Workers' Union is affiliated, and is familiar with the program, structure, methods, and history of the League and with a pamphlet received in evidence published by the League and entitled: "The Trade Union Unity League (American Section of the R. I. L. U.) Its Program, Structure and History." The alien stated that "R. I. L. U." was an abbreviation of the name of an organization known as Red International Labor Union, with headquarters in the Soviet Union in Moscow.

■ Brief quotations from the Program of the Trade Union Unity League and the fact that the alien was a member of an organization that sent delegates to the Red International Labor Union at Moscow, together with the admitted activities of the alien in support of the program of these organizations, were sufficient to warrant the conclusion of the inspector of immigration, the Board of Review, and the Secretary of Labor and the issuing of the warrant of deportation.

The following is found in the pamphlet containing the program of the League:

"The TUUL (Trade Union Unity League) repudiates completely the nationalistic and patriotic stand of the reformist trade unions. It joins hands with the militant labor movement of the world under the banner of the Red International of Labor Unions. The RILU is the only revolutionary world union of workers. It makes war on world imperialism and its social-facist allies of the Amsterdam International. In every country its unions are to be found in the very forefront of the class struggles. The TUUL is the American Section of the RILU."

"The TUUL organizes the workers and aggressively wages the class war, so that their maximum power may be brought into the struggle against the capitalist class. It supports the revolutionary political struggles and the political organization of the working class, the Communist Party.

"The TUUL has a revolutionary goal. It points out to the workers the disaster of the capitalists owning the industries and operating them for their own profits. It advocates the overthrow of the present system of capitalist ownership and exploitation and the establishment of a Soviet system in which production will be carried on, not for private profit, but for the social good. Only by such revolutionary action can the American workers, like the workers in other countries, finally free themselves from unemployment, low wages, long hours, the speed-up, gradually worsening conditions, and terrible war."

"The Trade Union Unity League fights militantly against the impending capitalist war and for the defense of the Soviet Union. Its slogan is: 'Not a man, not a cent, not a gun for Imperialist War.' It seeks to mobilize the great masses of workers against war by organizing strikes, demonstrations, etc. in conjunction with all militant organizations fighting against war. In the event of an Imperialist War it will mobilize the workers to struggle against American imperialism and to transform this war into a class war against the capitalist system itself. The TUUL devotes special attention to organizing the workers in the war industries."

■ The program of the Red International Labor Union and the Communists is now a matter of general knowledge. Ungar v. Seaman (C. C. A.) 4 F.(2d) 80; Antolish v. Paul (C. C. A.) 283 F. 957; U. S. ex rel. Vojewvic v. Curran (C. C. A.) 11 F.(2d) 683; United States v. Tapolesanyi (C. C. A.) 40 F.(2d) 255.

It should be noted that the pamphlet entitled "Trade Union Unity League, Its Program, etc.," received in evidence, was not obtained at the alleged illegal seizure of papers by the police of the city of Lawrence at the headquarters of the National Textile Workers' Union, the place where the alien was making his headquarters during a strike of textile workers in that city and where he was arrested, but by an inspector of immigration at these same headquarters, and, so far as appears in the record, in a lawful manner.

■ A printed copy of the same pamphlet and of the Program of the Communist International was also presented, which the inspector may well have found the Trade Union Unity League supports. See quotation from its Program, supra. These were obtained from the publishers, and in view of the testimony of the alien were competent evidence before the administrative officials.

■ It is unnecessary to consider the counsel's objection to the receipt in evidence of the papers seized at the headquarters of the National Textile Workers' Union by the police of Lawrence without a warrant. Without deciding whether the alien, upon his written request, was entitled to a subpœna to summon the chief of police of Lawrence, though we do not thereby suggest that the subpœna was improperly refused, it does not appear that hearing was essentially unfair by reason of the refusal, as there was sufficient competent evidence outside of any printed or written matter thus obtained by the police to warrant the conclusions of the administrative officials. Antolish v. Paul, supra.

The decision of the District Court is affirmed.