## WOLCK v. WEEDIN, Commissioner of Immigration.

### No. 6642.

Circuit Court of Appeals, Ninth Circuit.
May 9, 1932.

Marion A. Zioncheck, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

SAWTELLE, Circuit Judge.

Appellant, Vladimir Wolck, is a citizen of Russia, 34 years old, who came to this country first in 1912.

On May 10, 1931, he attended a public meeting in the Workers' Center Hall in Seattle, the Seattle headquarters of the Communist Party. During the course of the meeting some twenty uniformed policemen of the city of Seattle and about twenty-five uniformed immigration inspectors of the Seattle district entered the hall and examined those present with regard to their citizenship. Appellant, in response to questioning admitted that he was a citizen of Russia, whereupon he and four others were arrested and taken to the United States Detention Station, where Wolck was detained.

Shortly thereafter Wolck was examined in a separate room; was imprisoned overnight; and in the morning of May 11 examined a second time. On the basis of these examinations the commissioner of immigration in Seattle made telegraphic application to the Secretary of Labor for a warrant for the arrest of Wolck. This warrant was issued on May 12, 1931. Wolck was then arrested under the authority of said warrant, and was granted further hearings on May 27 and June 16, 1931, at which times he was represented by counsel. The commissioner found that appellant was subject to deportation, and recommended deportation to Russia, from Seattle via Shanghai, if deportation from New York was not practicable. The commissioner admitted, however, that he did not know if deportation to Russia could be accomplished.

The entire record was forwarded to the Secretary of Labor, and on July 29, 1931, a warrant of deportation was issued by the Assistant to the Secretary of Labor. This warrant ordered deportation to Russia through Seattle to Shanghai, with the further proviso: "It is further recommended that if deportation as directed can not be effected within a reasonable time, the alien be released from custody and further action in the case held in abeyance until such time as deportation to Russia becomes feasible."

Appellant filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Washington, Northern Division. The District Court refused the writ, and therefrom comes this appeal.

There is no question but that the facts established at the preliminary examination and at the examinations after the issuance of the warrant are sufficient to establish that Wolck is subject to deportation. It appeared during the course of the examinations that Wolck had been selling the "Daily Worker," a Communist paper, the copies of which he received directly from the Communist Party; that he was in sympathy with the present form of government in Russia; that, if the working people in this country took steps to overthrow the present form of government by force in order to substitute the Russian form of government, he would "go with them"; that he was not a member of the Communist Party because he was not considered intelligent enough, but that he sympathized with the party's aims; that he joined the Unemployed Council, an organization indirectly associated with the Communist Party, because he could not join the latter; that he contributed money to the Communist Party whenever he was able.

It is not contended here that the appellant is a member of the Communist Party, but from the above it appears that he was "affiliated" therewith within the meaning of the statute. 8 USCA § 137 (e) and (f) provides for the deportation of—

"(e) Aliens who are members of or affiliated with any organization, association, society, or group, that writes, circulates, dis-

tributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue, or display, any written or printed matter of the character described in paragraph (d).

"(f) For the purpose of this section: (1) the giving, loaning, or promising of money or anything of value to be used for the advising, advocacy, or teaching of any doctrine above enumerated shall constitute the advising, advocacy, or teaching of such doctrine; and (2) the giving, loaning, or promising of money or anything of value to any organization, association, society, or group of the character above described shall constitute affiliation therewith; but nothing in this paragraph shall be taken as an exclusive definition of advising, advocacy, teaching, or affiliation."

Appellant's sympathy with the aims of the Communist Party and his desire to join that party when allowed to do so; his admission that he had been "connected" therewith for about a year; his attendance at party meetings; his selling the party organ; his giving money to the Communist Party whenever he could afford it, even though it was only in small amounts—all of these things are, within the meaning of the statute above and particularly subsection (2) quoted, sufficient to establish Wolck's "affiliation" with the Communist Party, and consequently determine his liability to deportation. Moreover, the Standard Dictionary defines the term "affiliate with" as "to receive on friendly terms; to associate with; to be intimate with; to sympathize with; to consort with"; and Webster's New International Dictionary defines the term as "to connect or associate one's self with."

Appellant is deportable under still another section of the Immigration Act, 8 USCA § 155, which provides for the deportation of aliens who "at any time after entry shall be found advocating or teaching the unlawful destruction of property, or advocating or teaching anarchy, or the overthrow by force or violence of the Government of the United States or of all forms of law or the assassination of public officials. * * *"

Appellant was asked:

"Would you like to see the present form of government that now exists in the United States replaced by the form of government that is now enforced in Russia. A. Whatever steps the American working people take I will go with them.

"If they were to resort to force in order to gain their objective you would go with them? A. I would go with them."

We are confronted, however, with the strongly urged contention of appellant that the primary arrest or detention before the issuance of the warrant was unlawful, that the incarceration and accompanying questioning violated "due process of law," and that consequently all the subsequent proceedings are invalidated. Appellant contends that the first examination was conducted with the immigration inspector threatening violence if he did not answer, and threatening to send him to the penitentiary if he refused to divulge any information. The record, however, contains nothing to substantiate appellant's statements.

As said by the Supreme Court in the case of Bilokumsky v. Tod, 263 U. S. 149, 158, 44 S. Ct. 54, 57, 68 L. Ed. 221: "* * * Irregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law. 'A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.' "

See, also, Chun Shee v. Nagle (C. C. A. 9) 9 F.(2d) 342; McCandless v. United States ex rel. Murphy (C. C. A. 3) 47 F.(2d) 1073.

There is no contention that the examinations after the issuance of the warrant, presuming the validity thereof, were not in accordance with due process of law. Appellant was allowed to read the warrant, was allowed the benefit of counsel, was duly informed of his rights and privileges. As these last two hearings were conducted properly with regard to the rights of the appellant, and as the findings were sufficient to establish that Wolck is subject to deportation, under the rule of the Bilokumsky v. Tod Case, supra, we must affirm the judgment of the Board of Review and that of the District Court in refusing to grant the writ.

The warrant of deportation directs that appellant be returned to Russia via Shanghai, but in that connection the Board of Review said, as we have seen before: "It is further recommended that if deportation as directed can not be effected within a reasonable time, the alien be released from custody

and further action in the case held in abeyance until such time as deportation to Russia becomes feasible."

There was no error on the part of the District Court in denying the petition for a writ of habeas corpus. It is ordered that the cause be remanded to the District Court, with instructions that, if deportation as directed cannot be effected within thirty days from the date of the mandate, the writ issue as prayed and the prisoner be released from custody.