**UNITED STATES ex rel. KETTUNEN v. REIMER, Com'r of Immigration.**

No. 454.

Circuit Court of Appeals, Second Circuit.

Aug. 5, 1935.

Fannie Horovitz, of New York City (Abraham Unger, of New York City, of counsel), for relator.

Martin Conboy, U. S. Atty., of New York City (Edward J. Ennis, Asst. U.

S. Atty., of New York City, of counsel), for respondent-appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The relator, Pauli Olavi Kettunen, is a Finn who entered this country with his mother at the Port of New York on July 26, 1925, when a boy of 15 and has since remained here. He was arrested in Duluth, Minn., February 21, 1934, on a warrant charging him with being an alien in the United States in violation of law, in that he was a member of or affiliated with an organization, association, society, or a group that believes in, advises, advocates, and teaches the overthrow by force or violence of the government of the United States. The proscribed organization referred to was the Communist Party. He was given a hearing at Duluth before an immigration inspector, at which he appeared with his counsel and testified. At that time an allegation that he was at the time of entry a person likely to become a public charge was added. Statements he had made to an inspector previous to his arrest were introduced in evidence, and on the record then made the charges were sustained. His deportation pursuant to Act of Oct. 16, 1918, 40 Stat. 1012, as amended by Act of June 5, 1920, c. 251, 41 Stat. 1008 (8 USCA § 137), was recommended. On June 25, 1934, the Board of Review sustained only the charge of affiliation and recommended deportation on that ground alone. On July 11, 1934, a warrant for deportation on that ground was issued. The relator was the unsuccessful petitioner for a writ of habeas corpus in the District Court in Minnesota, was taken to Ellis Island, and brought this petition for such a writ when there in New York Harbor awaiting deportation.

Decision must turn on the result of an examination of the evidence which led to the finding that he was affiliated with the Communist Party. If it was sufficient to support that finding, there is no substantial basis, despite some argument to that effect, that his hearing was unfair.

It appeared that he went to school in New York for a time after he landed and then went to live with his uncle in Duluth, Minn., where he attended school and worked in a bathhouse until 1927.

He then worked as a painter and as a sailor on the lakes. At one time he was in Berkeley, Cal., where he joined an organization known as the Finnish Workers Club. Little is shown as to the character and purposes of this organization, but it is enough for the present to know that there is neither proof nor claim that membership in it made him liable to deportation. In 1932 he was back in Duluth, where he attended a meeting of the Communist Party held in the rooms of the Finnish Workers Club in that city. Blank applications for membership were handed to people in the audience, including the relator, and he filled out and signed one of them which he turned in to the local secretary for forwarding to the state headquarters of the party at Minneapolis. He probably paid the initiation fee at that time also, though the record is not clear as to that. But, as the Board of Review so found and we cannot say the evidence was not sufficient for that finding, we accept it as the fact. His application was held in abeyance pending the next meeting which he was told to attend. He did attend, but by that time had changed his mind about becoming a member and requested the secretary to wait a while before sending his application to Minneapolis. As a result, his application was never sent to headquarters; he never received a membership book, and did not become a member of the Communist Party. There is no evidence that he attended any other meetings of that party or had anything more to do with it except what may be inferred from the following facts: In 1933 he was in New York City, where he worked selling newspapers for a book store located in a building frequented by Finns, and called the Labor Temple. Among the newspapers he then sold was the Daily Worker, which is the official organ of the Communist Party. He accounted for the proceeds of his sales of newspapers to the book store, and was allowed an agreed part of them for his work. It does not appear that the book store was connected in any way with the Communist Party or that the relator dealt with any representatives of that organization. His refusal to state at the hearing whether he believed in the overthrow of this government by force or violence was relied on as added proof of the affiliation found to be the fact.

In deciding this case, we shall not attempt to give a comprehensive definition of the word "affiliation" as used in the statute. Very likely that is as impossible as it is now unnecessary. It is enough for present purposes to hold that it is not proved unless the alien is shown to have so conducted himself that he has brought about a status of mutual recognition that he may be relied on to co-operate with the Communist Party on a fairly permanent basis. He must be more than merely in sympathy with its aims or even willing to aid it in a casual intermittent way. Affiliation includes an element of dependability upon which the organization can rely which, though not equivalent to membership duty, does rest upon a course of conduct that could not be abruptly ended without giving at least reasonable cause for the charge of a breach of good faith. So tested we cannot agree that there was evidence to establish that this relator was affiliated with the Communist Party. His application for membership would indicate his then sympathy with its aims, but his reconsideration and failure to join shows his unwillingness to let his sympathy control his actions, and there is no proof which shows any mutual recognition that co-operation was to be expected from him. In United States ex rel. Yokinen v. Commissioner of Immigration, 57 F.(2d) 707 (C. C. A. 2), and Wolck v. Weedin, 58 F.(2d) 928 (C. C. A. 9), active co-operation with the Communist Party was shown to support the charge of affiliation, and Yokinen had been a member of that party.

While the relator's refusal to answer as to his belief in the overthrow of organized government may have some evidential force (see Vajtauer v. Commissioner, 273 U. S. 103, 111, 47 S. Ct. 302, 71 L. Ed. 560; Bilokumsky v. Tod, 263 U. S. 149, 153, 44 S. Ct. 54, 68 L. Ed. 221), it is no more than a scintilla in the setting here. We have not yet reached the point where proof of one's belief can rest solely upon his refusal to answer questions concerning it. Nor, as we have already said, is belief in communistic principles equivalent to affiliation with the Communist Party.

Though the decision of the court in Minnesota dismissing the petition for the writ of habeas corpus there is entitled to consideration, the doctrine of res adjudicata does not control. Salinger v. Loisel, 265 U. S. 224, 44 S. Ct. 519, 68 L. Ed. 989; Wong Doo v. United States, 265 U. S. 239, 44 S. Ct. 524, 68 L. Ed. 999. What was called for was the exercise of sound judicial discretion to prevent abuse of the writ in view of the fact that the petition had been dismissed in Minnesota. We find no ground for believing there has been any; nor does the record indicate that the court below was of that opinion.

Order reversed, with directions to grant the petition.