## In re SADERQUIST.

District Court, D. Maine, S. D.

Aug. 20, 1935.

Nathan Greenberg, of Boston, Mass., and Richard Armstrong, of Biddeford, Me., for petitioner.

E. J. Harrigan, Asst. U. S. Atty., of Portland, Me., for government.

PETERS, District Judge.

The petitioner, a citizen of Sweden, attacks the legality of a deportation warrant issued by the United States Department of Labor. The warrant in question directs the deportation of the alien to his native country on the grounds,

1. That he is a member of an organization advocating the overthrow of this government by force and violence.

2. That he is a member of or affiliated with an organization distributing literature advocating such action.

3. That he himself believes in or advocates such action.

This country, like every other, has the undoubted right to define the conditions under which aliens may remain within its territory and to deport those who do not care to comply with those conditions. Our Congress, by an Act approved October 16, 1918, amended June 5, 1920 (title 8, U. S. Code § 137 [8 USCA § 137]), has provided that a citizen of another country may not advocate or affiliate himself with persons advocating the forcible overthrow of our government, and reside or continue to reside here.

The enforcement of these and other provisions of the statute referred to, however, is not left with the courts but with the United States Department of Labor, and the action of the officers of that executive department of the government is final and conclusive upon every one, including the courts, if taken after a fair hearing upon substantial evidence. There is no judicial power to review or reverse a finding of fact made by the executive department under such circumstances. Skeffington v. Katzeff (C. C. A.) 277 F. 129, 133.

Counsel representing the petitioner for a writ of habeas corpus, not controverting the views above expressed, ask this court to intervene and order the petitioner's release on the ground that the action of the Department of Labor was illegal as its findings were not based on substantial evidence. This is the only point to be elaborated. The claim that the petitioner was not given a fair hearing is not much pressed, nor could it well be, in view of the evidence, which shows an orderly proceeding with rights of the petitioner fully preserved with competent counsel representing him. An analysis of the evidence produced at the hearings shows less ground for the finding that the petitioner himself believes in or advocates the violent overthrow of the government than for the other findings that he is a member of and is affiliated with organizations which entertain and act upon such beliefs. As it is sufficient if there is evidence of one or more statutory causes for deportation, I confine this opinion to causes other than personal beliefs, which, at best, are difficult of proof.

The charges that the petitioner is a member of or affiliated with an organization advocating violent overthrowing of our government or one circulating literature so advocating were based in general upon the following evidence:

The petitioner himself testified that he is a member, in good standing, of the communist party of America and has been since 1930. At the preliminary hearing he denied this, but later positively so testified and described some of his activities as a member of what he denominated the New England section of the communist party of America. As a witness, the petitioner showed himself to be intelligent, alert, and having an excellent facility in the use of the English language.

Several extracts from the report of the Congressional Committee, 71st Congress, appointed to investigate communist activities in the United States, were read to the petitioner as a witness. Among others, certain testimony given to the Congressional Committee by one Foster, one time head of the communist party of America, is as follows:

"The conquest of power by the proletariat does not mean peaceful capturing of ready-made bourgeois state machinery by means of a parliamentary majority. The bourgeoisie resorts to every means of violence and terror to safeguard and strengthen its predatory property and political domination. Like the feudal nobility of the past, the bourgeoisie can not abandon its historical position to the new class without a desperate and frantic struggle; hence the violence of the bourgeoisie can only be suppressed by the stern violence of the proletariat.

"The Chairman: Just what is the Third International?

"Mr. Foster: The Communist International is the world party of the communist movement.

"The Chairman: Is the Communist Party of the United States connected with it?

"Mr. Foster: It is.

"The Chairman: In what way?

"Mr. Foster: It is the American section."

At the hearing the petitioner, after listening to the above and other extracts from Foster's testimony as to the revolutionary views of the Communist International, was handed a copy of the report, examined it, and said: "I have this same thing at home. Yes, I understand that to be the doctrine of the communist party."

A pamphlet purporting to contain the program of the Communist International, with its constitution and rules, was introduced in evidence, and from it the following extracts are quoted:

"1. The Communist International—the International Workers' Association—is a union of Communist Parties in various countries; it is a World Communist Party. As the leader and organizer of the world revolutionary movement of the proletariat and the upholder of the principles and aims of Communism, the Communist International strives to win over the majority of the working class and the broad strata of the property-less peasantry, fights for the establishment of the world dictatorship of the proletariat, for the establishment of a World Union of Socialist Soviet Republics, for the complete abolition of classes and for the achievement of socialism—the first stage of Communist society.

"2. The various Parties affiliated to the Communist International are called the Communist Party of ——— (name of country) (Section of the Communist In-

ternational). In any given country there can be only one Communist Party affiliated to the Communist International and representing its Section in that country.

"The Communists disdain to conceal their views and aims. They openly declare that their aims can be attained only by the forcible overthrow of all the existing social conditions. Let the ruling class tremble at a Communistic revolution. The proletarians have nothing to lose but their chains. They have a world to win.

"The conquest of power by the proletariat is the violent overthrow of bourgeois power, the destruction of the capitalist State apparatus (bourgeois armies, police, bureaucratic hierarchy, the judiciary, parliaments, etc.) and substituting in its place new organs of proletarian power, to serve primarily as instruments for the suppression of the exploiters."

From this, as well as other evidence, the representatives of the Department of Labor were justified in finding that the organization in which the petitioner claims membership is one advocating the overthrow of our government by force.

Quoting from similar extracts from the manifesto and constitution of the Communist International and of the Communist Party of America, the Circuit Court of Appeals in this Circuit, in 1922, in refusing to discharge a petitioner for habeas corpus under circumstances like those in the present case, used the following language: "We think it would be going far afield to say that, from such statements of purpose, no reasonable man could reach the conclusion that force and violence are the necessary instrumentalities for its accomplishment and are contemplated, and that, if consummated, it would overthrow government as now instituted. On the contrary, it seems to us that a program which advocates the disarmament of the armed forces of the existing state, the arming of the laborer and the formation of a Communist army to protect the rule of the proletariat, affords substantial evidence that the Communist Party, of which the relators are confessed and avowed members, teaches and advocates the overthrow of govern-

ment by force and violence." Skeffington v. Katzeff, supra.

The Labor Department certainly had substantial evidence for a finding that the aims of the Communist Party of America, of which the petitioner is a member, and the Communist International are identical, but it would not be material if it were otherwise. It is sufficient if they are affiliated, and that fact under the evidence cannot be doubted.

This question arose in Kjar v. Doak, 61 F.(2d) 566, 569, in which the Circuit Court of Appeals in the Seventh Circuit used the following language:

"Whether the Communist Party or the Trade Union Unity League believes and advocates the same things as does the Communist International is not material. It is sufficient if they are affiliated, and that fact, under the evidence, cannot be denied. Nor was it necessary to prove that appellant had knowledge of the contents of the programs of the several organizations, or any one of them. It is sufficient if the evidence showed that he was a member of, or affiliated with, such an organization as contemplated by the statute. The documents objected to by appellant were properly admitted in evidence. Murdoch v. Clark (C. C. A.) 53 F.(2d) 155. That evidence clearly characterized the Communist International as an organization contemplated by the statute now under consideration. The Communist Party of America is an affiliate of that organization, and by reason of that affiliation appellant, who admits membership in the latter, must be considered an affiliate of the former organization."

Membership of an alien in or affiliation with the Communist Party has been held sufficient to support a warrant issued by the Department of Labor for such alien's deportation. Kjar v. Doak, and cases cited.

A perusal of the records leads to the conclusion, both that the petitioner had a fair hearing and that there was substantial evidence for the findings of the Department of Labor above referred to, in which case this court has no. right to interfere, and consequently the entry must be that the petition for writ of habeas corpus is denied.