**QUATTRONE v. NICOLLS.**
**No. 4750.**

United States Court of Appeals
First Circuit.

Feb. 19, 1954.

514

Frederick Cohen, Brookline, Mass., for appellant.

Jerome Medalie, Asst. U. S. Atty., Brighton, Mass. (Anthony Julian, U. S. Atty., Boston, Mass., with him on brief), for appellee.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered February 19, 1953, in the United States District Court for the District of Massachusetts denying the appellant's petition for a writ of habeas corpus and dismissing the petition.

On two separate occasions in 1949 an investigator of the Immigration and Naturalization Service interviewed the appellant. Written transcripts containing the questions and replies of these interviews were signed by the appellant. In January of 1950, the appellant was arrested on a warrant of deportation. The warrant charged the appellant with being found in the United States in violation of Sec. 1 of the Act of October 16, 1918, as amended,[1] in that he was, after entry: (1) an alien who is affiliated with an organization that advises,

1. Act of October 16, 1918, 40 Stat. 1012, as amended, 8 U.S.C. (1946 ed.) § 137, now 8 U.S.C.A. § 1182.

"§ 137. *Same; anarchists, etc.*

"Any alien who, at any time, shall be or shall have been a member of any one of the following classes shall be excluded from admission into the United States:
*     *     *     *     *

"*Advocates of violent overthrow of Government, assault on Government officers, or destruction of property*

"(c) Aliens who believe in, advise, advocate, or teach, or who are members of or affiliated with any organization, association, society, or group, that believes in, advises, advocates, or teaches: (1) the overthrow by force or violence of the Government of the United States or of all forms of law, * * *

"*Publishers, etc., of such doctrines*

"(d) Aliens who write, publish, or cause to be written or published, or who knowingly circulate, distribute, print, or display, or knowingly cause to be circulated, distributed, printed, published, or displayed, or who knowingly have in their possession for the purpose of circulation, distribution, publication, or display, any

written or printed matter, advising, advocating, or teaching, opposition to all organized government, or advising, advocating, or teaching: (1) the overthrow by force or violence of the Government of the United States or of all forms of law, * * *

"*Affiliates of such publishers, etc.*

"(e) Aliens who are members of or affiliated with any organization, association, society, or group, that writes, circulates, distributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue, or display, any written or printed matter of the character described in paragraph (d).
*     *     *     *     *

"*Deportation*

"(g) Any alien who was at the time of entering the United States, or has been at any time thereafter, a member of any one of the classes of aliens enumerated in this section, shall, upon the warrant of the Attorney General, be taken into custody and deported * * *. The provisions of this section shall be applicable

advocates, and teaches the overthrow, by force and violence of the Government of the United States, and (2) an alien who is affiliated with an organization that writes, circulates, distributes, prints, publishes, and displays any written and printed matter advising, advocating and teaching the overthrow, by force and violence of the Government of the United States.

On January 25, 1951, a deportation hearing was held before the Immigration and Naturalization Service in Boston, Massachusetts. At the conclusion of this hearing an additional charge was lodged against the appellant. This charge alleged that the appellant was subject to deportation on the ground that he was "an alien who is affiliated with the Communist Party of the United States."[2] The hearing was then adjourned until February 13, 1951. At both hearings appellant was represented by counsel and on the advice of counsel refused to answer any questions concerning his membership or affiliation with any organization.

On February 16, 1951, the Hearing Officer rendered his decision and ordered that the appellant be deported on the ground * * * that he is found to have been after entry * * * An alien who is affiliated with the Communist Party of the United States." On

August 13, 1951, the decision and order of the Hearing Officer were affirmed by the Assistant Commissioner, Adjudications Division, Immigration and Naturalization Service. An appeal was dismissed by the Board of Immigration Appeals on April 11, 1952. A warrant for deportation was issued and served upon the appellant in January, 1953. He was taken into custody and held without bail at the Detention Station in East Boston. A petition for a writ of habeas corpus was denied by the district court and this appeal resulted.

■ The appellant contends that he was deprived of due process of law in the deportation hearings because the hearings were procedurally unfair. Judicial review on this issue is limited to whether or not " * * * there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the trial", U. S. ex rel. Vajtauer v. Commissioner of Immigration, 1927, 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560,[3] and whether or not the appellant had a fair opportunity to be heard. The Japanese Immigrant Case (Yamataya v. Fisher), 1903, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721; Bilokumsky v. Tod, 1923, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221.

to the classes of aliens mentioned therein, irrespective of the time of their entry into the United States."

2. Internal Security Act of 1950, September 23, 1950, § 22, 64 Stat. 1006, 8 U.S.C. (1946 ed., Supp. IV) §§ 137, 137-3, now 8 U.S.C.A. §§ 1182, 1251.

"§ 137. *Same; subversive aliens.*

"Any alien who is a member of any one of the following classes shall be excluded from admission into the United States:

* * * * *

"2. Aliens who, at any time, shall be or shall have been members of any of the following classes:

* * * * *

"(C) Aliens who are members of or affiliated with (i) the Communist Party of the United States, * * *

* * * * *

"§ 137-3. *Deportation of subversive aliens.*

"(a) Any alien who was at the time of entering the United States, or has been at any time thereafter, * * * a member of any one of the classes of aliens enumerated in section 137(2) of this title, shall, upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in the Immigration Act of February 5, 1917. The provisions of this section shall be applicable to the classes of aliens mentioned in sections 137-8 of this title, irrespective of the time of their entry into the United States."

3. Proceedings relating to the exclusion or expulsion of aliens are no longer subject to the provisions of sections 5, 7, and 8 of the Administrative Procedure Act, 5 U.S.C.A. §§ 1004, 1006, 1007. Act Sept. 27, 1950, 64 Stat. 1048.

The evidence admitted in the deportation hearings clearly substantiates the following findings of the Hearing Officer and Assistant Commissioner. The appellant is an alien, a native and citizen of Italy. He entered the United States on December 30, 1906 and was admitted for permanent residence. He subscribes to the "Daily Worker" and is aware that it is a Communist paper. Each week he pays for and receives five copies of the "Sunday Worker", a Communist party publication and he distributes these copies in the neighborhood. He is sympathetic to the Communist Party and has circulated their literature. He has collected money from friends and has contributed this money to the Communist Party. At least once a year since 1930 he has regularly made personal contributions to the Communist Party.

■ Most of the above facts were obtained from the signed transcript of statements made by the appellant under oath to the Investigating Officer prior to the hearings. These statements were voluntarily made and at a time when appellant was not being held in custody. No threats of any kind were made. Prior to taking the statements the Investigating Officer told the appellant that what he said might be used against him in any subsequent proceedings. Thus the requirement in 8 C.F.R., 1941 Supp. 150.1(c), Immigration and Naturalization Service, was complied with. The transcript was therefore properly admitted in the deportation proceedings. Bilokumsky v. Tod, supra.

■ Before the first deportation hearing the appellant filed motions for specifications, production of documents and a more definite statement. All of the Government's evidence was presented at the first hearing and the entire record of the proceedings was available to the appellant. After the first hearing the appellant was given three weeks additional time in which to prepare his defense. At the commencement of the second hearing appellant's counsel stated his readiness to proceed. The appellant was therefore in no way prejudiced by the denial of his motions. See Murdoch v. Clark, 1 Cir., 1931, 53 F.2d 155. The Hearing Officer did not and had never participated in this case as an investigating or prosecuting officer and there is no evidence to show that he was in any way personally biased or unfair to the appellant. See United States ex rel. Catalano v. Shaughnessy, 2 Cir., 1952, 197 F.2d 65; Belizaro v. Zimmerman, 3 Cir., 1952, 200 F.2d 282. We, therefore, conclude that the appellant was not in any manner " * * * deprived of his constitutional right to procedural due process." Kwong Hai Chew v. Colding, 1953, 344 U.S. 590, 601, 73 S. Ct. 472, 480, 97 L.Ed. 576.

Appellant also contends that the application of Sec. 22 of the Internal Security Law of 1950 [4] abridges his rights of freedom of speech, press and assembly guaranteed under the First Amendment. Appellant further contends that Sec. 22 deprives him of due process because he was arrested under one law and held deportable under another vastly changed law which was neither an "amendment" of the earlier law nor in effect at the time the alleged deportable acts took place or at the time of his arrest. The latter contention, in effect, is that Sec. 22 is an *ex post facto* law in violation of Article 1, § 9, Clause 3 of the Constitution of the United States.[5]

■■ The Supreme Court in Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586, however, held that the First Amendment does not prevent the deportation of aliens who were members of an organization found to advocate the overthrow of the Government by force and violence,[6] and that the *ex post facto* prohibition of Article 1, § 9,

---

4. See footnote 2, supra.

5. "No Bill of Attainder or *ex post facto* Law shall be passed."

6. See footnote 1, supra.

Clause 3 does not apply to deportation proceedings. The appellant attempts to distinguish the Harisiades decision on the ground that there was no finding in the instant deportation proceedings that the Communist Party of the United States is an organization which advocates overthrow of the Government by force and violence. The question, therefore, is whether Congress may constitutionally designate the Communist Party of the United States as an organization which advocates overthrow of the Government by force and violence.

■ It is well established that the power to deport aliens is " * * * a weapon of defense and reprisal conferred by international law as a power inherent in every sovereign state." Harisiades v. Shaughnessy, supra, 342 U.S. at pages 587, 588, 72 S.Ct. at page 518 (see cases cited in notes 11 and 14), and that such power is " * * * exercised by the government's political departments largely immune from judicial control." Shaughnessy v. U. S. ex rel. Mezei, 1953, 345 U.S. 206, 210, 73 S.Ct. 625.

■ In Title I of the Internal Security Act of 1950 Congress has made numerous findings on the nature and objectives of the Communist Party of the United States. On the basis of these findings Congress clearly could constitutionally find that the Communist Party of the United States is an organization which advocates the overthrow of the Government by force and violence. With respect to these findings the Supreme Court stated in Carlson v. Landon, 1952, 342 U.S. 524, 535, 536, 72 S. Ct. 525, 531, 96 L.Ed. 547:

" * * * The reasons for the exercise of power are summarized in Title I of the Internal Security Act. * * * We have no doubt that the doctrines and practices of Communism clearly enough teach the use of force to achieve political control to give constitutional basis, according to any theory of reasonableness or arbitrariness, for Con-

gress to expel known alien Communists under its power to regulate the exclusion, admission and expulsion of aliens. Congress had before it evidence of resident aliens' leadership in Communist domestic activities sufficient to furnish reasonable ground for action against alien resident Communists. * * * "
See also Harisiades v. Shaughnessy, supra, 342 U.S. at page 593, 72 S.Ct. 512. In Galvan v. Press, 9 Cir., 1953, 201 F.2d 302, certiorari granted 1953, 346 U.S. 812, 74 S.Ct. 53, the court held that Sec. 22 of the Internal Security Act of 1950, as applied to a past member of the Communist Party of the United States, did not infringe constitutional rights guaranteed by the Fifth Amendment. See also United States ex rel. Figueiredo v. District Director of Immigration and Naturalization of Port of N. Y., 2 Cir., 1953, 202 F.2d 958.

Also, this court and numerous other courts have consistently upheld administrative and judicial findings to the effect that the Communist Party of the United States is an organization which advocates the overthrow of the Government by force and violence. Murdoch v. Clark, 1 Cir., 1931, 53 F.2d 155; In re Saderquist, D.C.Me.1935, 11 F.Supp. 525, affirmed sub nom. Sorquist v. Ward, 1 Cir., 1936, 83 F.2d 890; Ex parte Vilarino, 9 Cir., 1931, 50 F.2d 582; Wolck v. Weedin, 9 Cir., 1932, 58 F.2d 928; Kjar v. Doak, 7 Cir., 1932, 61 F.2d 566; United States ex rel. Ohm v. Perkins, 2 Cir., 1935, 79 F.2d 533; Branch v. Cahill, 9 Cir., 1937, 88 F.2d 545.

Appellant also attempts to distinguish the Harisiades decision on the ground that, unlike the petitioners in the Harisiades case, he is not and never was a member of the Communist Party and that proof of his affiliation with that party is lacking.

■ For more than thirty years Congress, in statutes pertaining to the exclusion and expulsion from the United States of aliens, has declared that the giving of money by aliens to certain

proscribed organizations constitutes their "affiliation" with such organizations.[7] Thus the appellant's sworn statement that he contributed money annually to the Communist Party of the United States from 1930 up to the year of his arrest, together with all the other evidence in the record, clearly supports the finding that the appellant was "affiliated" with the Communist Party. See Bridges v. Wixon, 1945, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103; Wolck v. Weedin, supra; United States ex rel. Kettunen v. Reimer, 2 Cir., 1935, 79 F.2d 315.

Appellant also argues that Sec. 22 of the Internal Security Act of 1950 must be construed to require proof of knowledge or intent of wrong on his part. But in the Harisiades decision the court did not require the Government to prove which *former* members of the Communist Party still believed in its illegitimate ends, and the court stated 345 U.S. at page 596, 72 S.Ct. at page 522: " * * * Congress, exercising the wide discretion that it alone has in these matters, declined to accept that as the Government's burden." But cf. Wieman v. Updegraff, 1952, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216. A fortiori no such burden is placed on the Government with respect to present members or affiliates, and this court and other courts have so held in interpreting the precursor of Sec. 22. In re Saderquist, supra, affirmed sub nom. Sorquist v. Ward, supra; Kjar v. Doak, supra.

And it is particularly clear on the facts of the instant case that Congress has imposed no such burden on the Government. This is not a case where the alien was merely a technical member of the Communist Party of the United States in former years, and subsequently repented of it, see Latva v. Nicolls, D.C.Mass.1952, 106 F.Supp. 658; and so, we are not now "urged to apply some doctrine of atonement and redemption." Harisiades v. Shaughnessy, supra, 345 U.S. at page 595, 72 S.Ct. 512, 522. The appellant has been circulating Communist literature and collecting money for the Communist Party and he has personally contributed money to it from 1930 right up to the time of his arrest. The Supreme Court in Bridges v. Wixon, supra, stated 326 U.S. at page 143, 65 S.Ct. at page 1447: " * * * He who renders financial assistance to any organization may generally be said to approve of its objectives or aims. So Congress declared in the case of an alien who contributed to the treasury of an organization whose aim was to overthrow the government by force and violence. * * * "

A final contention of the appellant is that Sec. 22 is a bill of attainder in violation of Article I, § 9, Clause 3 of the Constitution.[8] A bill of attainder has been defined as " * * * a legislative act which inflicts punishment without a judicial trial." Cummings v. State of Missouri, 1866, 4 Wall. 277, 323, 18 L.Ed. 356. See United States v. Lovett, 1946, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252. But it is well established that deportation, however severe it may be on the alien, is not a punishment. Mahler v. Eby, 1924, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549; Carlson v. Landon, supra. Deportation " * * * is simply a refusal by the government to harbor persons whom it does not want." Bugajewitz v. Adams, 1913, 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978. See American Communications Ass'n v. Douds, 1950, 339 U.S. 382, 413, 70 S.Ct. 674, 94 L.Ed. 925.

The judgment of the district court is affirmed.

---

7. Act of June 5, 1920, 41 Stat. 1008, now 8 U.S.C.A. § 1101(e) (2); Internal Security Act of 1950, 64 Stat. 990, 50 U.S. C.A. § 782(17).

8. See footnote 5, supra.