**Rene GATO–HERRERA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. CV–S–99–0406PMP (RLH).**

United States District Court,
D. Nevada.

Jan. 22, 2001.

Ruben Villalobos, Las Vegas, NV, for Petitioner.

Francis W. Fraser–Department of Justice Civil Division, Washington, DC, Carlos Gonzalez, U.S. Attorney—Las Vegas, Las Vegas, NV, for U.S. Immigration & Naturalization Service, Respondent.

### *ORDER*

PRO, District Judge.

On February 11, 2000, Petitioner filed a Notice of Voluntary Dismissal (# 24). Because Respondent had already appeared, the Notice does not comply with Rule 41(a) of the Federal Rules of Civil Procedure. Petitioner served a copy of the Notice upon Respondent's Assistant District Counsel here in Las Vegas, Nevada. Petitioner did not serve a copy upon the counsel of the Department of Justice, Civil Division, in Washington, D.C., who has been actually litigating this and other similar actions on Respondent's behalf. That counsel was not listed as attorneys of record in the Court's records. The Washington counsel apparently did not receive word from the Las Vegas counsel of the Notice (# 24), for Respondent filed a Motion to Dismiss (# 25) on April 21, 2000. Petitioner filed a new petition for a writ of habeas corpus, Case No. CV–S–00–1032–PMP (LRL) ("00–1032"). Respondent moved to dismiss that petition because it duplicates the instant petition, and also noted that Petitioner had not filed a response to the Motion to Dismiss (# 25). Petitioner simultaneously filed a Response to the Motion to Dismiss (# 26) with his response in 00–1032. Because this action was not properly dismissed, the Court has dismissed 00–1032 to avoid any duplication. Petitioner's Response (# 26) is late, but Respondent has suffered no harm. Indeed, after reviewing these documents, the Court finds no reason to depart from its earlier decision in its Joint Order of January 6, 2000, and it grants the Motion to Dismiss (# 25).

Petitioner is a native of Cuba. He arrived in the United States on September 3, 1993, and Respondent paroled him into the country. After some criminal activity, he was found to be inadmissible and ordered removed from the United States. The removal order became final on January 13, 1998.

In its Joint Order of January 6, 2000, the Court held that Carlos Mejias Caraballo, a lead Petitioner, had no constitutional right to be free from continued detention because he had not entered the United States. After the entry of that Joint Order, the Court of Appeals for the Ninth Circuit held that 8 U.S.C. § 1231(a)(6) authorizes the detention of removable aliens (i.e., those who have entered the United States) for only a reasonable time past the expiration of a ninety-day period after entry of a final order of removal. *Ma v. Reno,* 208 F.3d 815, 830 (9th Cir.2000).

 When Petitioner came to the United States, he did not then gain admission as a lawful permanent resident. Instead, he was paroled into the United States. Immigration parole is a legislative creation, and it does not constitute entry into the United States. 8 U.S.C. § 1182(d)(5)(A); *Leng May Ma v. Barber,* 357 U.S. 185, 188–89, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958). Instead, under the "entry fiction," the alien is considered to be waiting at the border for admission. *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 212–13, 73 S.Ct. 625, 97 L.Ed. 956 (1953).[1]

---

1. Prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. 104–208, 110 Stat. 3009 (enacted on September 30, 1996), an alien who was not considered to have entered the United States was called "excludable." Now, such an alien is called "inadmis-

■ Petitioner's arguments that he has entered the United States through legislative enactments are unpersuasive. They are largely the same arguments made by Carlos Mejias Caraballo, which the Court rejected. Set out in notes to 8 U.S.C. § 1255 are several special adjustment provisions, such as the Nicaraguan Adjustment and Central American Relief Act of 1997[2] and the Cuban Adjustment Act of 1966.[3] These acts provide for the adjustment of an alien's status to lawful permanent residence. Contrary to Petitioner's arguments, none of these acts automatically adjusted his status merely by their enactment. These adjustment acts have several qualifications, depending upon the act, but under any act the alien must apply for adjustment. Petitioner has not alleged that he did, and thus he could not have received the adjustment. Because he has not received the adjustment to lawful permanent residence, he has not entered the United States.

■ Because he has not entered the United States, Petitioner's continued detention does not violate the Constitution. *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir.1995) (en banc). Nothing in *Ma* changes this conclusion.

The next question is whether 8 U.S.C. § 1231(a)(6) authorizes Respondent to hold Petitioner. The key factor behind *Ma's* interpretation of section 1231(a)(6) is not present in this case. Ma had entered the United States, Petitioner has not. The fact of entry is inseparable from *Ma's* analysis of section 1231(a)(6). First, indefinite detention of removable aliens raises serious constitutional issues. *Id.* at 826–27. The court determined that Congress intended § 1231(a)(6) to authorize deten-

tion for a short time after expiration of the removal period in those cases which the time is necessary to effect removal. *Id.* at 828. Given the constitutional rights of removable aliens, the language of § 1231(a)(6) does not support the inference that Congress intended to authorize indefinite detention of removable aliens. *Id.* at 827–28. Because Petitioner has not entered the United States, extension of *Ma* would require the Court to assume that serious constitutional questions about his continued detention exist where there are, in fact, no such questions.

■ Second, long-standing Ninth Circuit precedent[4] construed earlier statutes' authorization to detain deportable aliens to a reasonable time. *Ma* concluded that Congress intended nothing different when it enacted the Immigration and Nationalities Act in 1952 and later amended it through IIRIRA. 208 F.3d at 828–29. This construction cannot extend beyond aliens who have entered the United States. *Barrera–Echavarria* held that when Congress amends a statute but does nothing to correct an agency's interpretation of the statute, the agency's interpretation is consistent with Congressional intent. 44 F.3d at 1444–45 (citing *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982)). This was the case with the former statutory provisions that implied authority to continue to detain excludable aliens; indeed, Congress was silent not only in light of Respondent's interpretation of the statutes, but also in light of the near-unanimous judicial acceptance of that interpretation. *Barrera–Echavarria*, 44 F.3d at 1447–48 & n. 4. The amendment that created section 1231(a)(6) is silent with respect to Respon-

---

sible." For the purposes of this Order, the terms are synonymous. *See* 8 U.S.C. § 1182.

**2.** Pub.L. 105–100, Title II, § 202, 111 Stat. 2193 (enacted Nov. 19, 1997), as amended Pub.L. 105–139, § 1(a), (b), 111 Stat. 2644 (enacted Dec. 2, 1997).

**3.** Pub.L. 89–732, 80 Stat. 1161, (enacted Nov. 2, 1966), as amended Pub.L. 94–571, § 8, 90

Stat. 2706 (enacted Oct. 20, 1976); Pub.L. 96–212, Title II, § 203(i), 94 Stat. 108 (enacted Mar. 17, 1980).

**4.** *Wolck v. Weedin*, 58 F.2d 928, 930–31 (9th Cir.1932); *Saksagansky v. Weedin*, 53 F.2d 13, 16 (9th Cir.1931); *Caranica v. Nagle*, 28 F.2d 955 (9th Cir.1928).

dent's interpretation that it has authority to continue to detain inadmissible or excludable aliens. If Congress' silence upon enactment of section 1231(a)(6) in light of *Wolck, Saksagansky,* and *Caranica* indicates no intent to change policy concerning removable aliens, then that same silence in light of Respondent's interpretation and the precedent concerning excludable aliens, including *Barrera–Echavarria* itself, indicates no intent to change policy concerning inadmissible aliens. A contrary holding would require the Court to assume that Congress intended to follow judicial precedent regarding detention of deportable aliens, intended to disregard judicial precedent regarding detention of excludable aliens, and was silent about that intention.

 Finally, *Ma* held that the rule of *Murray v. The Charming Betsy,* 6 U.S. (2 Cranch) 64, 117–19, 2 L.Ed. 208 (1804), requires construction of § 1231(a)(6) to avoid violating international law. International law prohibits prolonged and arbitrary detention. 208 F.3d at 830. Because Congress did not intend § 1231(a)(6) to authorize indefinite detention of removable aliens, a reasonable time limit on detention was a permissible construction in light of international law. *Id.* However, as noted above, Congress' intent was to allow the continued detention of excludable and inadmissible aliens. The Court cannot reconcile Congress' enactment with international law, and thus international law is displaced. *See Barrera–Echavarria,* 44 F.3d at 1450–51.

In short, an extension of *Ma* would require the Court to find that *Ma* overturned *Barrera–Echavarria* and discarded its reasoning with respect to excludable aliens. However, *Ma,* being a panel decision of the Court of Appeals, could not have overturned *Barrera–Echavarria. Roundy v. Commissioner,* 122 F.3d 835, 837 (9th Cir.1997).

For these reasons, *Ma* does not change the Court's conclusion in its Joint Order of January 6, 2000, that Respondent may continue to detain aliens who have not entered the United States.

IT IS THEREFORE ORDERED that this action is reinstated.

IT IS FURTHER ORDERED that the Motion to Dismiss (# 25) is GRANTED. The Clerk of the Court shall enter judgment accordingly.