**UNITED STATES ex rel. FORTMUELLER v. COMMISSIONER OF IMMIGRATION, ELLIS ISLAND, NEW YORK HARBOR.**

District Court, S. D. New York.
March 21, 1936.

Sol H. Cohn, of New York City (Osmond K. Fraenkel, of New York City, of counsel), for relator.

Lamar Hardy, U. S. Atty., of New York City (Thomas McCall, Asst. U. S. Atty., of New York City, of counsel), for respondent.

CAFFEY, District Judge.

Both the Labor Department and the court are obligated to carry out the will of Congress as expressed in the immigration laws. It is not within the province of either to exercise its own notion as to the policy or justice of the legislation. So also it is beyond the power of the court to disregard, much less to set aside, findings of fact by the Labor Department if, on examination of the record, it ascertain that they rest on substantial evidence. However much in dispute and however open to divergent inferences, if the proof were such that the department could reach the conclusions stated in its findings, it would be unlawful for the court to interfere. If there was such proof here, then all the court may determine is whether the facts, as found by the Labor Department, bring the case within the deportation provisions of the statute and whether the procedure was free from error.

It is conceded in behalf of the relator that the findings, as made by the Labor Department, bring him within the statutory provisions which direct that he be deported. The sole questions, therefore, are: (1) Was there evidence on which any finding, as made, could be based? (2) Was the procedure fair? If both questions be answered in the affirmative, then it follows that the action of the Labor Department must stand and that this court is without authority to relieve the relator from it.

The relator is an alien. In 1929 he was admitted to this country. He has been here ever since. In 1930 he became a member of the Communist Party of the United States section of the Communist International. He continues to belong to that organization. He firmly adheres to its tenets. He has been and is its active supporter. For more than a year prior to his arrest he wrote voluminously in advocacy of its doctrines and program. All of this is without dispute.

On March 21, 1935, he made a statement under oath to an immigration inspector. On April 13 a warrant, containing charges of violating the immigration laws, was served on and read to him. Thereupon an adjournment of his hearing on the charges was taken until April 29. Before the latter date was reached, at the request of his counsel, there was another adjournment to May 8. On the latter day testimony was taken.

In the warrant there were three charges. All related to alleged conduct with respect to overthrow by force or violence of the government of the United States. In substance they were that: (1) He believed in, advised, advocated, or taught this; (2) he wrote, published, or caused to be written or published printed matter advising, advocating or teaching this; and (3) after entry he became a member of or affiliated with an organization, association, society, or group that believes in, advocates, or teaches this. If guilty of any of the specified charges the law requires, and, as already remarked, it is not controverted that the law requires, that he be deported. 8 U.S.C.A. §§ 137, 155.

In a case like the present the scope of judicial review is very narrow. If there was any evidence to support the Labor Department's findings of fact, they must be accepted. The court is without power to disturb them. Tisi v. Tod, 264 U.S. 131, 133, 44 S.Ct. 260, 68 L.Ed. 590; U. S. ex rel. Casimano v. Commissioner of Immigration (C.C.A.) 15 F.(2d) 555, 556.

Was there evidence on which the Labor Department could find that the first charge was true?

The alien declared that he favored and urged that the Soviet form of government, as it prevails in Russia, replace the existing form of government of the United States. At his preliminary examination on March 21, 1935, he was asked whether: "If it is absolutely necessary to use force or violence to substitute a Soviet form of Government, would you be in favor of such force or violence?" His answer was: "Yes, I guess so." Exhibit A, p. 7. Without more, clearly this statement was enough to enable the Labor Department to make a finding adverse to the relator on the first charge. That being true, there is no occasion to go further in the inquiry. Whatever may be the view of the court as to what the finding ought to have been, in the circumstances stated the court is powerless to nullify or to disregard it. Nevertheless, I deem it proper to add that, as I see it, there was abundant other evidence upon which the department might have predicated the same finding.

True, immediately following the testimony quoted above the record continues as follows (Exhibit A, p. 8):

"(Requests to qualify his answer) Yes, in accordance with the teachings of Thomas Jefferson and Abraham Lincoln.

"Q. What do you mean by that? A. Thomas Jefferson states in the Declaration of Independence that when the Government becomes unjust and depressive (oppressive, sic!) the people have the right to alter, or if necessary to overthrow it, or words to that effect."

The Labor Department, however, was warranted in treating the attempted modification of the prior admission as without effect. Let it be assumed, for example, that Jefferson and Lincoln advocated the use of force or violence in overthrowing the government of the United States; or, what is the equivalent, assume that a citizen of the United States to-day advocates that course. This would not help the relator in the slightest. He is an alien. That makes the difference under our law. The relator is within our gates on sufferance only. He was permitted to enter on conditions. In its wisdom Congress has

prohibited aliens from doing what the relator, by implication, suggests was done by two great Americans. Congress has gone further. It has prescribed that if an alien, while occupying a guest status in this country, violates the prohibitions, he shall be deported. On the other hand, it has not provided, and perhaps is without constitutional power to provide, that an American citizen who does the same thing shall be deported. It is because the law governing who shall be deported discriminates in this way between aliens and citizens that the attempt of an alien to justify his conduct by pointing to what a citizen is allowed to do is without force.

Obviously if an alien be found guilty of such a violation of law as is now under discussion, the Labor Department would be recreant to its duty if it failed to issue a warrant for his deportation. It could not escape from issuing the warrant except by itself disobeying the law. If any one deem the law as so written to be erroneous or unwise, his sole remedy under our system of government is by appeal to Congress for a change.

In his testimony at the May 8 hearing the relator in effect denied that he entertained the belief about the use of force or violence in the way he had avowed it at the March 21 examination (Minutes, pp. 19, 20). Furthermore, both he and his witnesses said, or at least implied, that the party to which he belonged had no such program (Minutes, pp. 10, 22, 25, 29). Nevertheless, it is not for the court to say that the Labor Department should have rested its finding on this other evidence or should have made a contrary finding on account of the other evidence. So to do would be to stray outside of the province of the court as defined by law. The department was free to believe that the relator told the truth in the statement he made at the March 21 examination.

Up to this point I have dealt with a single finding, the first of the three. Let us now turn to the third finding. I think examination of the record makes clear that the department was entitled to say, as it did say, that the third finding also was established.

■ The relator stated that in 1930, the year after he came to the United States, he joined, and that he still is an active member of, a party which the courts have generally held believes in overthrowing by force or violence the government of this country. The holding, indeed, is so nearly universal that I think it would be waste of time to review the evidence introduced on the subject in the case at bar. It is sufficient for me, however, that it has been so ruled by the Circuit Court of Appeals for the Second Circuit. U. S. v. Commissioner of Immigration, 57 F.(2d) 707; U. S. v. Com'r of Immigration, Ellis Island, 65 F.(2d) 593; U. S. v. Reimer, 79 F.(2d) 315. That binds me.

Moreover, the documentary evidence (Minutes, pp. 5–18) completely justified the Labor Department in treating the Communist Party as within the class of organizations membership in which is proscribed for an alien allowed by law to remain in the United States. Compare U. S. ex rel. Vojewvic v. Curran (C.C.A.) 11 F.(2d) 683. See, also, Skeffington v. Katzeff (C.C.A.) 277 F. 129; Antolish v. Paul (C.C.A.) 283 F. 957; Ungar v. Seaman (C.C.A.) 4 F.(2d) 80; Murdoch v. Clark (C.C.A.) 53 F.(2d) 155; Wolck v. Weedin (C.C.A.) 58 F.(2d) 928; Kjar v. Doak (C.C.A.) 61 F.(2d) 566; In re Saderquist (D.C.) 11 F.Supp. 525.

It is contended that in several respects the proceedings were improper. These will be taken up in turn.

■ The first complaint is that the charges were too indefinite to enable the relator to know what he was to meet. The criticism, however, is not borne out by the record.

The warrant was exhibited to the relator (Minutes, p. 1). He and his counsel examined the transcript of evidence (Exhibit A) on which it was issued (Minutes, pp. 1, 3). The taking of evidence began without any request from either for amplification or clarification of what the charges were or of what the charges, as set out in the warrant, meant. When publications were put in, the officer conducting the hearing, upon request, with meticulous care explained what parts of them were deemed pertinent for consideration (Minutes, pp. 5–18). As I read the record, it is little short of absurd at this stage to insist that either the relator or his counsel did not realize with precision what was charged. On the present point, Ungar v. Seaman (C.C.A.) 4 F.(2d) 80, cited by the relator, is distinguishable on the facts. See Ex parte Vilarino (C.C.A.) 50 F.(2d) 582, 587.

■ During the hearing, after many documents had been introduced, additional

charges were preferred (Minutes, pp. 23, 36). It is not necessary to consider these, however, because, even though they be disregarded, the result of the application for release on habeas corpus would be the same. As is manifest, and has been so frequently said, guilt of one charge compels deportation.

On April 13, 1935, and by a subsequent extension, the relator was given approximately one month to prepare for trial. This was after he had inspected the warrant and the evidence on which it was issued (Minutes, pp. 1, 2). When the hearing was resumed on May 8, it proceeded without objection from himself or his counsel (Minutes, pp. 2, 3). He testified at length, save as to questions which, on advice of counsel, he declined to answer, and had the opportunity to testify fully (pages 3–24) and two witnesses testified in his behalf (pages 25–32). Thereafter, at the same session, his counsel asked for a thirty-days adjournment in order to procure the testimony of sixteen persons to the effect that the party of which the relator was a member had not advocated overthrowing the United States government by force or violence. The inspector conducting the hearing offered to stipulate that they would express that opinion if called as witnesses. This, however, was not satisfactory to the relator's counsel. Thereupon the adjournment was denied (pages 32–34).

There is no showing whatever of effort to get, much less of diligence to obtain, the testimony of the witnesses mentioned in time for submission at the May 8 hearing. In the circumstances, accordingly, I feel that there is no ground for holding that the Labor Department was arbitrary or unreasonable, or even exercised bad judgment, in refusing to grant the adjournment. Cf. Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 424, 425, 43 S.Ct. 458, 67 L.Ed. 719.

My examination of the entire record does not disclose any unfairness in the proceedings. As I see it, the relator was afforded ample opportunity to put his case before the Labor Department.

At the oral argument it was urged that if the relator return to his native land, there is danger of his being maltreated there. If the danger exist, I do not believe the court has power to relieve of it. Nevertheless, there is no occasion to determine the question. Plainly the risk may be obviated by the alien's own voluntary action. This is so because the deportation warrant accords him the privilege of going "to any country of his choice, except contiguous territory or adjacent islands."

Writ dismissed.