## UNITED STATES ex rel. TRINLER v. CARUSI, Com'r of Immigration & Naturalization.

### No. 1198.

District Court, E. D. Pennsylvania.

June 18, 1947.

194

Lemuel B. Schofield and Abram Orlow, both of Philadelphia, Pa., for petitioner.

Gerald A. Gleeson, of Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

Petitioner is an alien, a native and citizen of Switzerland. On April 11, 1942, he was admitted to the United States at Baltimore, Maryland, in the status of a treaty merchant under Section 3(6) of the Immigration Act of 1924, 8 U.S.C.A. § 203(6).

On August 10, 1943, petitioner pleaded guilty to an indictment for violation of 18 U.S.C.A. § 88, viz., conspiracy to export industrial diamonds contrary to the provisions of Presidential Proclamation No. 2413, July 2, 1940, promulgated pursuant to 50 U.S.C.A.Appendix, § 701. On August 24, 1943, he was sentenced to imprisonment for 22 months and fined $7500. He has served his sentence and paid the fine.

On July 7, 1944, a warrant for petitioner's arrest was issued by the defendant, Commissioner of Immigration and Naturalization, charging that petitioner was unlawfully in the United States in violation of the Immigration Act of 1924 in that he had remained in the United States after failing to maintain the status of treaty merchant under which he had been admitted. 8 U.S.C.A. § 214. Hearings were held and on review an order of deportation was entered. Petitioner has not yet been taken into custody for deportation, but has been advised to make himself ready for deportation.

In his Petition for Review, petitioner asks this Court to review the deportation proceedings and to set aside the order of deportation as illegal. Petitioner contends that the facts of his conviction and incarceration do not support the legal conclusion that he has violated his status as treaty merchant; and that the order of deportation is therefore without authority in law. He thus seeks to present an issue of law on the merits for the determination of this Court.

Petitioner's allegation of jurisdiction is based on Section 10 of the recently enacted Administrative Procedure Act, approved June 11, 1946, P.L. 404, 79th Cong., ch. 324, 2d Sess., 5 U.S.C.A. § 1009. The defendant moved to dismiss the petition, and the order to show cause issued thereon, on the ground that the Court lacks jurisdiction of the subject matter.

Section 10 of the Administrative Procedure Act, upon which petitioner relies, provides, inter alia:

"Sec. 10. Except so far as (1) *statutes preclude judicial review* or (2) agency action is by law committed to agency discretion—

"(a) Rights of Review. Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof." (Emphasis supplied.)

Therefore, in so far as the immigration statutes indicate a Congressional purpose

to limit review, so far can they be said to be unaffected by this section of the Act.

The power to exclude and deport aliens stems from the authority of the United States as a sovereign nation and its authority over commerce with foreign nations. Chinese Exclusion Case (Chae Chan Ping v. United States), 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068; Head Money Cases (Edye v. Robertson), 112 U.S. 580, 591, 600, 5 S.Ct. 247, 28 L.Ed. 798. By the statutes Congress has enacted, aliens who seek admission to the United States are divided into three classes: nonimmigrants, nonquota immigrants and quota immigrants, 8 U.S.C.A. §§ 203, 204, 205. Nonimmigrants are allowed admission under a policy of promoting good relations among the peoples of the world; e. g., the two most numerous groups in this class are alien seamen, members of a crew, and alien visitors, on business or pleasure. Petitioner, a treaty merchant, falls into this class, and was entitled to enter the United States solely to carry on trade authorized by the provisions of a treaty of commerce and navigation with the country of which he was a national. The process whereby an alien obtains admission into the United States under any of the three categories is a lengthy one, and at its initial stages is subject only to administrative, and, ultimately, political controls. Thus, it has been pointed out that "Key man in the administrative structure for admission of aliens is the United States consul abroad. With visas required for both immigrants and temporary visitors, and with power to issue visas vested in the consul, his consent is a necessary condition to any further action of the Immigration authorities in passing upon the eligibility of the alien to entry." Note, 39 Col.L.Rev. 502, 503. And, further, that "It is probable that in the exercise of this power, the consul has absolute discretion and that the appeal against him is through diplomatic channels only" (see United States v. Hughes, 3 Cir., 116 F.2d 613, 615); although this is not true of consular power to revoke visas already issued. United States ex rel. Strachey v. Reimer, 2 Cir., 101 F.2d 267. Under the statutes of 1917 and 1924, a detailed administrative procedure has been set up to handle the exclusion of aliens and the deportation of those already admitted into the country. Cf. Reitzel, "The Immigration Laws of the United States—An Outline", 32 Va.L.Rev. 1099. Under these statutes, the deportation of aliens unlawfully in the United States is committed to the Attorney General and it is explicitly provided that his decision "shall be final." 8 U.S.C.A. § 155.

The possible effect of unsettling settled practice as to the propriety of judicial review and the comprehensive scope of the deportation process is indicated by figures of the Department of Labor. See Oppenheimer, "Recent Developments in the Deportation Process", 36 Mich.L.Rev. 355, 357, 358. For the five-year period of 1932-1936 inclusive, investigations of aliens contemplating warrants of arrest averaged over 119,000 a year. Deportation under warrant proceedings for the same period averaged 13,000 a year. In every year a number of aliens subject to deportation are permitted to depart without consummation of warrant proceedings. For the same five years, such departures averaged over 9,000 a year. For the same period, an average of less than 200 of these proceedings reached the courts each year in applications for habeas corpus. There seem to be no cases where a court has allowed review of an order of deportation in any other way. Thus, the courts have held themselves without jurisdiction to entertain a bill in equity to cancel an order of deportation, Fafalios v. Doak, 60 App.D.C. 215, 50 F.2d 640, certiorari denied, 284 U.S. 651, 52 S.Ct. 31, 76 L.Ed. 552; a bill in equity for injunction, Rash v. Zurbrick, D.C., 6 F.Supp. 390; a bill in equity for a declaratory judgment, Darabi v. Northrup, 6 Cir., 54 F.2d 70; a petition for writ of certiorari, In re Ban, D.C., 21 F.2d 1009; a petition for writ of prohibition, Poliszek v. Doak, 61 App.D.C. 64, 57 F.2d 430. In Bridges v. Wixon, 326 U.S. 135, 167, 65 S.Ct. 1443, 1458, 89 L.Ed. 2103, Chief Justice Stone said:

"Congress has committed the conduct of deportation proceedings to an administrative officer, the Attorney General, with no provision for direct review of his ac-

tion by the courts. Instead it has provided that his decision shall be 'final', 8 U.S.C. § 155, 8 U.S.C.A. § 155, as it may constitutionally do. Zakonaite v. Wolf, 226 U.S. 272, 275, 33 S.Ct. 31, 32, 57 L.Ed. 218, and cases cited. Only in the exercise of their authority to issue writs of habeas corpus, may courts inquire whether the Attorney General has exceeded his statutory authority or acted contrary to law or the Constitution, Bilokumsky v. Tod, 263 U.S. 149, 153, 44 S.Ct. 54, 55, 68 L.Ed. 221; Vajtauer v. Commissioner of Immigration, supra [273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560]. * * *"

Although this is an excerpt from a dissenting opinion, on this statement of the law there seems to be no disagreement between majority and minority.

Since habeas corpus affords a judicial review of the Attorney General's actions, petitioner argues that his decisions are, therefore, not "final," and that no statute, in the words of Section 10 of the Administrative Procedure Act, "preclude[s] judicial review." But under the words of Section 10, if the immigration statutes preclude all review of the Attorney General's decisions in deportation cases except that afforded by habeas corpus, then petitioner's bill must fail. Since that remedy is required by the Constitution (See Estep v. United States, 327 U.S. 114, 120, 66 S.Ct. 423, 90 L.Ed. 567) it would seem that the immigration statutes, as they have been interpreted for many years, deny the right to review as much as is constitutionally possible.

There is no doubt that the Administrative Procedure Act reflected a deep seated dissatisfaction on the part of some towards the present operation of administrative agencies. But whether or not Congress intended to disturb the procedures governing deportation which have grown up in operation for many years is doubtful. The legislative history of the Act is, at best, not explicit. It is true that the Report of the House Judiciary Committee stated: "To preclude judicial review under this bill, a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to with-

hold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review." (79th Cong., 2d Session, Sen. Doc.No. 248, P. 275.)

The Report of the Senate Judiciary Committee makes a similar observation (ibid. p. 212). But the applicable deportation statute does more than merely fail "to provide specially by statute for judicial review." Such is not the case, it is true, with situations which have arisen under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and the Railway Labor Act, 45 U.S.C.A. § 151 et seq. Cf. American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347, and Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. The Administrative Procedure Act may conceivably provide judicial review of the operation of these agencies where none existed before, although the Court expresses no opinion on that. But the statute in this case is not silent on the question of review. It affirmatively states that in orders of deportation, "the decision of the Attorney General shall be final."

Neither counsel has referred to Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 426, 90 L.Ed. 567, which merits consideration. The Supreme Court there construed section 11 of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 311, to allow a defendant, indicted for a violation of the Act, to attack a local board's induction order, even though section 10(a) (2) of that Act states that the "decisions of such local boards shall be final except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe." It construed the words "shall be final" to limit the scope, rather than the right, of review of local board action taken under that Act. Estep v. United States, supra, 327 U.S. at page 122, 66 S.Ct. 423, 90 L.Ed. 567. However, the Court feels that this decision is not controlling here. The proceeding of which Estep successfully sought review by means other than habeas corpus was a criminal one, and this

was, in large part, the basis of the decision. Estep v. United States, supra, 327 U.S. at page 122, 66 S.Ct. 423, 90 L.Ed. 567. The deportation proceeding of which petitioner in the instant case seeks review is civil in nature. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221. Moreover, the concrete issue in the instant case is what Congress intended thirty years ago on the question of review of deportation orders and whether the Administrative Procedure Act effects a change. Its original intent has been made clear by an unbroken line of decisions denying the sort of review prayed for in the instant case, and, significant to the inquiry into Congressional intent in the Administrative Procedure Act is the statement of the Attorney General found in Senate Document No. 248, supra, at p. 415: "Section 10 as to judicial review does not, in my view, make any real changes in existing law. This section in general declares the existing law concerning judicial review. * * * I know that some agencies are quite concerned about the phraseology used in section 10 for fear that it will change the existing doctrine of judicial review which has been settled for the particular agency concerned. I feel sure that should this section be given the interpretation which is intended, namely, that it is merely a restatement of existing law, there should be no difficulty for any agency. We may in a sense look at section 10 as an attempt by Congress to place into statutory language existing methods of review."

Against the background of the deportation process, the source of the power and its political and international connotations, the petitioner's status as a visitor on this nation's terms, the unanimous refusal of the courts to allow direct review of deportation orders in the past, and the possible ill effects inherent in a contrary course upon efficient handling of the immigration laws and judicial administration of crowded dockets, the court feels that to impute Congressional intent to allow the petition in the instant case would be an uncalled for interference with the administrative process. Since 8 U.S.C.A. § 155, limits judicial review of deportation orders, Section 10 of

the Administrative Procedure Act is, by its terms, inapplicable. Accordingly, petitioner's bill of review is dismissed.