**UNITED STATES ex rel. TRINLER v. CARUSI.**

No. 9461.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 15, 1947.
Decided Feb. 16, 1948.

O'CONNELL, Circuit Judge, dissenting.

Abram Orlow, of Philadelphia, Pa. (Lemuel B. Schofield, of Philadelphia, Pa., on the brief), for appellant.

Maurice A. Roberts, of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., and James P. McCormick, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

This case raises an interesting question concerning the right to judicial review under the Administrative Procedure Act,[1] hereinafter referred to as the Act.

The appellant, Trinler, is an alien who was admitted to the United States in 1942 as a "treaty merchant".[2] He was subsequently convicted for the violation of a Presidential war order, paid his fine and served the sentence imposed on him. Still later he has been made the unhappy subject of a deportation order issued by the Commissioner of Immigration and Naturalization, the person to whom the authority of the Attorney General to deport has been delegated.[3] This order was issued on the ground that he had failed to maintain his "treaty merchant" status. Claiming that

---

[1] 60 Stat. 237, Act June 11, 1946, 5 U. S.C.A. § 1001 et seq.

[2] 43 Stat. 154, Act May 26, 1924, 8 U. S.C.A. § 203.

[3] The deportation of aliens has by law been committed to the Attorney General. He has, however, delegated that authority to the Commissioner of Immigration and Naturalization with a right of review of the Commissioner's order to the Board of Immigration Appeals in those cases in which the Commissioner determines that the alien should be deported. 8 C.F.R. 90.1 (Supp.1943); 8 C.F.R. 90.3 (Supp. 1945); see Warren, The Federal Administrative Procedure Act and The Administrative Agencies (1947) pp. 294–295. If the Board's conclusions conflict with those of the Commissioner the case may be certified to the Attorney General upon the Commissioner's request or the Attorney General may request that the record in any case be certified to him. 8 C.F.R. 90.3 (Supp.1945).

The allegations in the petition, which for the purpose of this appeal we must take to be true, do not state which procedure was followed in the case at bar. But the following paragraphs of that petition state the authority of the Commissioner and that he issued the final order. They state:

"2. That the Defendant is the Commissioner of Immigration and Naturalization duly authorized by law to carry into effect the provisions of the Immigration Act of February 5, 1917 and all amendments thereto, and authorized by law to enter final orders thereunder."

"4. That by virtue of the provisions of the 'Administrative Procedure Act' above referred to, this Court has jurisdiction to review the proceedings in which the Commissioner of Immigration and Naturalization is a party in his final capacity as a designated officer of the Government of the United States who enters a final order in administrative proceedings by an Agency of the Government of the United States."

"8. That thereafter the defendant issued a warrant of arrest in proceedings for deportation by virtue of the authority of the defendant under the Immigration Act of 1924 and after hearing and review, the said defendant directed the deportation of your petitioner and advised him that a final order had been entered by the defendant under the proceedings whereby the petitioner was to make himself ready for deportation at the convenience of the Defendant."

the Act gave him a right to judicial review of this order, he filed in the District Court of the United States for the Eastern District of Pennsylvania a document labelled "Petition for Review". On motion of the respondent the petition was dismissed. 72 F.Supp. 193 (E.D.Pa.1947) noted in 96 U. of Pa.L.Rev. 268 (1947). He has appealed.

■ The first question raised is whether, assuming all other questions are answered in favor of the appellant, this case is ripe for review. It was suggested in the argument in this Court that the administrative process had not yet come to an end and until it had, review was premature. This point was evidently not made in the District Court and, indeed, was not taken seriously in the briefs submitted to us. But it was stressed in oral argument and has made us some difficulty.

We think this objection does not impose any substantial obstacle to review. The administrative process has come to an end. The statute says "the decision of the Attorney General shall be final."[4] That decision has been made by the Commissioner of Immigration and Naturalization, the duly delegated official, and this deportation order has been issued thereupon. It is true that Trinler has not been taken into custody and, obviously, has not been put on a ship for deportation, nor has the ship sailed. But these three things are no part of the administrative process. That ended when, intermediate proceedings provided for by the regulations issued by the Attorney General having been gone through with,[5] the order of deportation was issued. There is nothing more to do now than the purely ministerial act of taking the man into custody, putting him on a ship bound for the designated port.[6]

No inconsistency between this view and that of the selective service cases is present. In fact they furnish a persuasive analogy here, as shown by the following language of Mr. Justice Douglas in Estep v. United States:[7] "Falbo v. United States, supra [320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305], does not preclude such a defense in the present cases. In the Falbo case the defendant challenged the order of his local board before he had exhausted his administrative remedies. Here these registrants had pursued their administrative remedies to the end. All had been done which could

---

[4] § 19 of the Immigration Act of 1917, 39 Stat. 889, amended by 54 Stat. 1238, Reorganization Plan No. 5, June 14, 1940, 54 Stat. 671, Act June 28, 1940, 8 U.S.C.A. § 155.

[5] When the Commissioner determines that there is cause to suspect that a person is in the country in violation of the Immigration statute he causes a warrant to be issued. It is the issuance of the warrant which starts the administrative process and the hearing afforded the alien comes after the warrant is issued. See Warren, The Federal Administrative Procedure Act and The Administrative Agencies (1947) pp. 294–295. The regulations of the Attorney General provide that the alien shall be accorded a hearing before an immigration inspector to determine whether he is subject to deportation on the charges stated in the warrant of arrest, at which hearing the alien is entitled to representation by counsel and to offer evidence in his behalf. After the conclusion of the hearing, the inspector is required to prepare a memorandum setting forth a summary of the evidence adduced at the hearing, his proposed findings of fact and conclusions of law and a proposed order, which are to be furnished to the alien, or his counsel who may file exception thereto and submit a brief. 8 C. F.R. 150.6 (Supp.1941). The decision is then made by the Commissioner. The alien then has a right of appeal to the Board of Immigration Appeals, a body authorized by the Attorney General to perform his functions in relation to deportation but responsible solely to him. 8 C.F.R. 90.3 (Supp.1945). If one member of the Board dissents the proceedings are reviewed by the Attorney General, 8 C.F.R. 90.5, 90.12 (Supp.1945). Otherwise, the warrant of deportation is issued by the Commissioner.

[6] Once the order is issued the Commissioner would be recreant to his duty and disobeying the law if he did not deport the alien unless the matter came within the exception contained in the Immigration Act which is not involved here. 39 Stat. 889, Act Feb. 5, 1917, amended 54 Stat. 1238, Reorganization Plan No. 5, June 14, 1940, 54 Stat. 671, Act June 28, 1940, 8 U.S.C.A. § 155; see United States v. Commissioner of Immigration, S.D. N. Y.1936, 14 F.Supp. 484, 487.

[7] 1946, 327 U.S. 114, 123, 66 S.Ct. 423, 428, 90 L.Ed. 567.

be done. Submission to induction would be satisfaction of the orders of the local boards, not a further step to obtain relief from them."

To conclude that the administrative process has ceased with the issuance of the deportation order by the delegatee of the Attorney General does not, however, settle the question of whether Trinler has a right of judicial review or the nature of that right, if any he has. Attention has already been called to the language of the statute which says that the "decision of the Attorney General shall be final." Nevertheless, and in spite of such language, it is perfectly clear that it is not final in the sense that courts cannot do anything about it.[8] The petitioner points out, and the Government agrees, that the legality of deportation orders may be tested in habeas corpus proceedings. The Government also points out and the petitioner agrees, that such orders have been tested successfully only in such proceedings and subject to whatever limitations as there are inherent in such proceedings as to the scope of those questions which may be raised by habeas corpus.[9] Such review is not available to this petitioner because he has not yet been taken into custody.

We have, therefore, a situation where in spite of statutory language of finality for an administrative order there is judicial review of long standing, albeit of a limited nature. The new question presented in this litigation is whether that review has been enlarged by Section 10 of the Administrative Procedure Act. Para-

graph (a) of Section 10 gives judicial review to "Any person * * * adversely affected * * * by such action."[10] We do not need to labor the point that petitioner is adversely affected by the deportation order. His difficulty comes, however, in the "excepting" clause with which Section 10 opens. That clause says "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion" the right of judicial review is given.[11]

The Commissioner says that this case is an instance under the first exception because the basic statute[12] precludes judicial review and it precludes it in the already quoted phrase that the "decision of the Attorney General shall be final." Trinler says this phrase does not settle the question because in spite of that language courts have judicially reviewed deportation orders for many years through the habeas corpus proceedings. It is admitted, says Trinler, that at this particular stage of his deportation matter habeas corpus would not be available. Nevertheless, his argument runs, since there is a court created judicial review for deportation orders it cannot be said that the case is one where judicial review is precluded. Therefore, the argument continues, he has the right to review which Section 10 of the statute gives and the right accrues when the order is issued without his having to wait for the court created right of review by habeas corpus.

The Commissioner argues that such a result would upset long established ad-

[8] In Japanese Immigration Case, 1903, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721, it was held that in habeas corpus proceedings a court could inquire into the deportation proceedings to ascertain if a fair hearing was had, notwithstanding that the statute contained no provision for a judicial review. Congress was aware of this case when it wrote the present immigration law. Sen.Rep.No. 352, 64th Cong., 1st Sess., Vol. 2, Misc. ii. p. 16 (1916); see 96 U. of Pa.L.Rev. 268 (1947).

[9] Petitioner, however, states that other proceedings have failed because the remedy employed was not the proper one rather than due to the fact that habeas corpus was the exclusive remedy.

See 96 U. of Pa.L.Rev. 268 (1947). In this connection it is interesting to note that the Attorney General's Committee indicated that the Declaratory Judgment Act of 1934 may afford a method to review deportation orders. See Administrative Procedure Act—Legislative History, Sen.Doc.No.248, 79th Cong., 2d Sess. p. 37.

[10] 60 Stat. 243, Act June 11, 1946, 5 U.S.C.A. § 1009(a).

[11] 60 Stat. 243, Act June 11, 1946, 5 U.S.C.A. § 1009.

[12] The Immigration Act of 1917, 39 Stat. 889, Act Feb. 5, 1917, amended by 54 Stat. 1238, Reorganization Plan No. 5, June 14, 1940, 54 Stat. 671, Act June 28, 1940, 8 U.S.C.A. § 155.

ministrative procedure in the handling of deportation cases. The petitioner argues that to permit a right of review upon the issuance of the deportation order instead of compelling a man to wait until arrested is ever so much fairer to him and prevents the hardship of his having to sacrifice his American possessions and be prepared to be taken out of the country if his habeas corpus proceedings fail. We can grant the truth of the foregoing statements by each side without being helped in the solution of our problem here. If the Act creates new rights for aliens by providing an earlier review of deportation orders, the Attorney General will have to modify his administrative practice. If it does not, the alien will have to continue to suffer whatever hardships that accompany his right to habeas corpus. The nub of the question seems to us to be whether these deportation proceedings are such as to fall within the first exception to Section 10 as a proceeding provided by a statute which "preclude[s] judicial review".

Our conclusion is that the case does not fall within the exception. Therefore the judicial review provisions found in Section 10 of the Act are applicable. We are impressed by the fact that in spite of the basic statute's wording habeas corpus proceedings have always been available. Since they have been available the situation can-

not be one where judicial review in the past has been precluded. In this we are supported, we think, by discussion found in the legislative history of the Act. In that discussion it was pointed out that statutes which preclude judicial review are unusual.[13] Congressman Walter pointed out to the House of Representatives that this clause was simply put in to provide for the unusual situation where judicial review of administrative action was actually precluded.[14]

It may be granted that the area covered by Section 10 of the statute is not very wide. Counsel for petitioner has given us a long list of important statutes in which judicial review is expressly provided for. It may well be that the instances where it is expressly precluded are few. But whether the new law [15] made by Section 10 be wide or narrow, the instant case seems to us to be one which fits into it.

While it might look as though judicial review were precluded by the giving to the deportation order the air of finality, in practice such finality never existed because of the availability of habeas corpus. The fact that review has been judge-made out of the concept of due process does not make it any less a qualification of the statute than if the legislators had put the provision in it when the statute was first drawn.[16]

[13] An example is the Economy Act of 1933, 48 Stat. 9, Act March 20, 1933, 38 U.S.C.A. § 705. In that Act such prohibition is expressly stated in clear and unequivocal language. United States v. Mroch, 6 Cir., 1937, 88 F.2d 888. The language used in the Selective Service Act, on the other hand, caused the court to hold that review of a Board's order was permissible. Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567. Congress, itself, recognized that such language was not strong enough to prohibit all review for it indicated that habeas corpus would be available after the registrant was inducted. H. Rep.No.36, 79th Cong., 1st Sess. (1945) 5.

[14] See Administrative Procedure Act—Legislative History, Sen.Doc.No.248, 79th Cong., 2d Sess. p. 380. In five of the six bills introduced the original phrase in the section prescribing judicial review was "expressly preclude". The elimination of the word "expressly" in the bill which finally became law has no significance other than to indicate that the failure of the basic statute to contain the exact words "precludes review" is not conclusive. But the words of the Act when given their ordinary meaning and reference to the legislative history makes it clear that a mere failure to provide for review or an intent to limit the review granted does not place a statute within the "excepting clause" of the Act. See Administrative Procedure Act—Legislative History, supra pp. 131–183 (various bills introduced), 311, 318, 325, 212.

[15] That it was the Congressional intent to make new law in this connection is evident from the answers given by the sponsor of the bill when it was being presented to the Senate. See Administrative Procedure Act—Legislative History, Sen.Doc.No.248, 79th Cong., 2d Sess. pp. 311, 318, 325.

[16] See Freund, Administrative Powers Over Persons and Property 240–1 (1928).

Since we conclude that petitioner is entitled to judicial review following the issuing of the order which adversely affects him, we think the form in which he has asked for such review is proper enough. The respondent pointed out to us that a bill in equity, declaratory judgment, and similar remedies were not available in these deportation cases. That is agreed to as the law stood prior to the Administrative Procedure Act. What we are here deciding is that the Act did enlarge the rights of people against whom deportation orders have been issued and that they are now entitled to judicial review after the issuing of a deportation order. That being so, a document headed "Petition for Review" is an appropriate enough form in which to ask for the relief.

It will be noted that the caption of this case is the type which customarily appears in habeas corpus proceedings. It seems to us inappropriate here. The United States is not the complaining party nor is Trinler a "relator". He is a petitioner and a public official is the respondent. These points do not go to the merits of the controversy but should be observed in the interest of neat presentation.

We express at this point no opinion whatever upon the merits of the petitioner's case. All we are deciding is that under the Administrative Procedure Act of 1946 he is entitled to have judicial review as one adversely affected by the deportation order after its promulgation but before he has been taken into custody.

The judgment of the District Court will be reversed and the case remanded for further proceedings in accordance with this opinion.

O'CONNELL, Circuit Judge (dissenting).

In the absence of Congressional history indicating an intent to broaden the scope of judicial review so as to include proceedings inherently political such as those here involved, Fong Yue Ting v. United States, 1893, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905, I am of the opinion that the finality clause of the Immigration Act of 1917 is within the excepting clause with which Section 10 of the Administrative Procedure Act opens. As recently as February 9, 1948, the Supreme Court has said: "This Court long has held that statutes which employ broad terms to confer power of judicial review are not always to be read literally. Where Congress has authorized review of 'any order' or used other equally inclusive terms, courts have declined the opportunity to magnify their jurisdiction, by self-denying constructions which do not subject to judicial control orders which, from their nature, from the context of the Act, or from the relation of judicial power to the subject-matter, are inappropriate for review." Chicago and Southern Air Lines, Inc., v. Waterman S. S. Corp., 1948, 68 S.Ct. 431, 433. I believe that the instant case calls for application of that principle.[1]

In Sunal v. Large, 1947, 332 U.S. 174, at 177, 67 S.Ct. 1588, at 1590, footnote 3, the Supreme Court recently said, "We therefore lay to one side cases such as Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2193; * * * where the order of the agency under which petitioner was detained was not subject to judicial review."[2] From the foregoing, it seems reasonable to me to infer that habeas corpus pro-

---

[1] Cf. International Union v. Bradley, D. C., 75 F.Supp. 394.

[2] Cases denying forms of relief other than habeas corpus include: In re Ban, W.D. N.Y.1927, 21 F.2d 1009, petition for writ of certiorari); Fafalios v. Doak, 60 App.D.C. 215, 50 F.2d 640; bill in equity to cancel deportation order, certiorari denied 1931, 284 U.S. 651, 52 S.Ct. 31, 76 L.Ed. 552; Darabi v. Northrup, 6 Cir., 1931, 54 F.2d 70; bill in equity for declaratory judgment; Poliszek v. Doak, 1932, 61 App.D.C. 64, 57 F.2d 430; petition for writ of prohibition; Kabadian v. Doak, 1933, 62 App.D.C. 114, 65 F.2d 202; petition for writ of prohibition, cer- tiorari denied 290 U.S. 661, 54 S.Ct. 76, 78 L.Ed. 572; Impiriale v. Perkins, 1933, 62 App.D.C. 279, 66 F.2d 805; petition to compel return of evidence, certiorari denied 290 U.S. 690, 54 S.Ct. 126, 78 L. Ed. 594; Rash v. Zurbrick, E.D. Mich., 1934, 6 F.Supp. 390; bill in equity for injunction, affirmed on another ground, 6 Cir., 1935, 75 F.2d 934; and Bata Shoe Co. v. Perkins, D.C.D.C., 1940, 33 F.Supp. 508; bill in equity for injunction. See also Lai To Hong v. Ebey, 7 Cir., 1928, 25 F.2d 714, 716; Daskaloff v. Zurbrick, 6 Cir., 1939, 103 F.2d 579, 581; and Kessler v. Strecker, 1939, 307 U.S. 22, 34, 59 S.Ct. 394, 83 L.Ed. 1082.

ceedings heretofore have not been considered "judicial review." This analysis is strengthened by Ex parte Tom Tong, 1883, 108 U.S. 556, 559, 560, 2 S.Ct. 871, 872, 27 L.Ed. 826, in which it was stated that "The prosecution against him [petitioner for writ of habeas corpus] is a criminal prosecution, but the writ of habeas corpus which he has obtained is not a proceeding in that prosecution. On the contrary, it is a new suit brought by him to enforce a civil right, which he claims * * *". Consequently, I am impelled to the conclusion that the statutory mandate according finality to the decisions of the Attorney General remains unimpaired.

Moreover, since judicial review under the Administrative Procedure Act permits at least an inquiry into whether the decision is supported by "substantial evidence," I find some difficulty in reconciling such inquiry with the finality mandate of Section 19 of the Immigration Act of 1917.

Accordingly, I think the judgment of the lower court should be affirmed.